No. 28,527.

H. S. SIX, *Appellee*, v. J. A. SHEA, *Appellant.*

(274 Pac. 221.)

Opinion filed February 9, 1929.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellant. *Charles C. Calkin,* of Kingman, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for rescission of a contract to purchase 320 acres of Colorado land.

Plaintiff based his action chiefly on the ground of alleged fraudulent misrepresentations made by defendant, touching the quality of the land, on which he relied. Defendant joined issue on the allegations of plaintiff; and pleaded ratification, estoppel, and laches of plaintiff after he had become conversant with the facts.

The cause was tried by the court, which made findings of fact and conclusions of law favorable to plaintiff, and judgment was entered accordingly.

Defendant assigns three principal errors, the first of which is that plaintiff's evidence was not sufficient to justify a finding of

fraud. That evidence may be sufficiently summarized thus: Plaintiff and defendant were confidential friends of many years' standing in Kingman county. Both dealt to some extent in land transactions and helped each other in their deals and sometimes had such transactions between themselves. In 1922 plaintiff and defendant and their wives made an automobile trip to Arizona, where they spent the winter together. In the spring plaintiff went on to California, and defendant returned to Kansas. They corresponded frequently until the summer of 1927, when plaintiff returned to Kansas and took up his abode temporarily in the home of defendant. Plaintiff revealed to defendant the fact that he had about $1,500 in cash and that he planned to go to farming on a quarter of Kingman county land which he possessed. During the few years plaintiff sojourned in California defendant had acquired some land in Lincoln county, Colorado, and had spent some time there. He also knew of a 320-acre tract of land of little value near his own Colorado holdings. The title to this land was in one Green, who had removed from Colorado to New Mexico after mortgaging the land for $600, which was practically all it was worth. Defendant conceived a scheme to palm off the "equity" in this land on plaintiff for the latter's $1,500, and effected a deal with Green whereby he obtained a deed to the land in exchange for something or other in Wichita of the nominal value of $100. After various maneuvers needless to rehearse, defendant induced plaintiff to buy this Green land for $1,500, receiving therefor $1,200 in cash and plaintiff's note for $300. Defendant erased his own name as grantee in the deed from Green and inserted the name of plaintiff. Plaintiff made this purchase because of his implicit confidence in defendant, and because of his reliance on defendant's representations as shown in the following excerpt from plaintiff's testimony:

"He [defendant] said it was a better country than this. The taxes were less and a man could make a better living out there than he could here and he said, 'I was out there' and 'I made good' and he says, 'I know if I can make good so can you make some money out there.'

"Q. What did Mr. Shea at that time say about the nature, character and quality of this land, this Gordon Green land? A. He told me it was nice level bottom land.

"Q. What did he say about water? A. He said water could be obtained from eighteen to twenty feet.

"Q. Did he otherwise describe the land except that it was nice level bottom land—what did he say about its worth for farm land? A. He said it was good farm land.

"Q. Did he say that he knew about that country out there? A. Yes, sir.

"Q. What did he say? A. He said it beat this country all to pieces; that it was a better country than this.

"Q. Did you give him the $1,200 check at that time? A. I did."

It will be noted that some of the foregoing statements attributed to defendant which induced plaintiff to buy the land "no sight and unseen" were mere matters of opinion, that the Colorado land was in a better country than Kingman county, and that it "beat this country all to pieces." But when defendant told plaintiff that the property was "nice level bottom land," and that it was "good farm land" and that water could be obtained at a depth of "eighteen or twenty feet," he was making representations of fact for which he was responsible, knowing as he did that plaintiff was purchasing the property in reliance thereon. It developed at the trial that these representations of fact were grossly untrue; the land was neither nice, nor level, nor good farm land; but was chiefly a low ridge or hogback of sand and gravel so sterile that little grass grew upon it and such bottom land as there was in the tract was subject to overflow and the soil of the bottom land was adobe underlaid with shale and had been scoured so much by periodic floods that only an occasional touch of coarse salt grass grew thereon. Some farming had been attempted on forty acres in one corner of the land—the only place where it was worth while to do so. The evidence also tended to show that no water was obtainable at any reasonable depth. An auger could not be drilled into the ground more than a few feet—at one place for more than twenty inches. In short, the property was a very poor quality of pasture land and worthless for tillage or general farming; and this court is bound to hold that the evidence was sufficient to sustain the trial court's findings that the contract of purchase had been effected through material misrepresentations of fact made by defendant touching the quality of the land, and that plaintiff had parted with his money in reliance thereon.

It is next urged that whatever fraudulent misrepresentations were made to induce plaintiff to buy the Colorado land were waived by him after he became fully apprised of the facts. This argument is based upon the following circumstances: The contract of purchase was effected on August 6, 1927. On August 28 plaintiff and defendant and their wives drove out to Colorado and stayed five or six days in a two-room house on defendant's land about three-quarters of a mile from the land in controversy. One evening about

sundown the two men and their wives drove to the northwest corner of the tract, where they halted a few minutes. On another occasion plaintiff and defendant took up some fencing on the northwest side of the land and hauled it to defendant's premises. The parties then returned to Kansas and plaintiff paid the $300 note he had given defendant as the balance of the purchase price. Later, about October 15, plaintiff went back to Colorado and occupied defendant's house under some tentative understanding that he was to farm defendant's land as well as the land he had purchased. There was a small cabin on the land he had acquired and he tore it down and hauled its materials to defendant's premises, not yet knowing how badly he had been duped. The evening he and defendant visited the land in August the latter misinformed him as to its direction and pointed out three forties of good land belonging to another man as part of the 320 acres plaintiff had acquired. Defendant came out in December and plaintiff asked him to help locate his land corners, but defendant said he "didn't have time." Eventually plaintiff learned which way his land lay and its character and said to defendant, "I found them stones up there—them corners. I haven't got no land. You think there would be any chance to turn that land so I could get my money out of it?" Defendant answered, "You might," and walked away and thereafter gave plaintiff no chance to talk to him.

It is on the foregoing facts that defendant chiefly bases his defense of ratification. But it does not seem just to apply that equitable doctrine to such a situation as that presented by this record. It is a fair talking point that plaintiff saw the land in August, but it was only one corner of it he saw, the best part of it, too, and it was sundown when he did see it and then only for a few minutes. Moreover, if plaintiff's evidence is true, defendant misled him as to its directions from the point where the parties were when they visited it, and made him believe he was getting 120 acres which did not belong to the tract bargained for at all. Defendant argues that plaintiff was furnished with a plat and the legal description of the land, but if that description was no more accurate or intelligible than what is set down in the record submitted to this court he should certainly be excused for not having understood it. Furthermore, at the time plaintiff and defendant had the conversation quoted above, the full extent of defendant's duplicity had not been revealed to plaintiff. He might be inclined to forgive defendant for misrep-

resenting the quality of the land so long as his confidence in him as a friend was not completely extinguished, and so long as it was possible for him to entertain a belief that the misrepresentations were merely innocent errors of judgment, but when he later learned that his supposed grantor, Green of New Mexico, had never sold him the land at all, but had sold it to defendant and that the latter had erased his own name as grantee from the deed and had inserted that of plaintiff, the full scope of the fraud practiced upon him stood revealed for the first time. After plaintiff was apprised of all the material facts constituting the fraud practiced upon him by defendant it cannot be said that plaintiff did anything which could be fairly characterized as ratification of the fraudulent sale which defendant had imposed on him.

The third point urged in defendant's behalf was laches—delay in bringing this action. There was no delay. It was late in December when defendant's duplicity was fully uncovered. By that time defendant had left the state of Colorado. How soon plaintiff was enabled to arrange his affairs to follow him back to Kansas does not appear, but this action was begun on February 14, 1928, less than two months after the facts constituting the cause of action were fully uncovered. There is no semblance of laches in the circumstances revealed in this case. Nor is there any abstruse question of law involved. It is a fact case throughout, and the final result prompts not the slightest misgiving that justice may have miscarried.

The judgment is affirmed.